# ADJUSTABLE-RATE NOTE
# HOME EQUITY CONVERSION
### (LIBOR One-Month Index (As Published In The Wall Street Journal)-Rate Caps)

**State of Texas**

Date: **September 27, 2013**
Property Address: **1707 Spruce St, Lufkin, TX 75901**

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means **One Reverse Mortgage, LLC** and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **September 27, 2013** ("Loan Agreement"), and up to a maximum principal amount of **ONE HUNDRED FORTY SIX THOUSAND TWO HUNDRED FIFTY AND NO/100** Dollars (U.S. **$146,250.00**), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. Interest will be charged on unpaid principal at the rate of **TWO AND 555/1000 percent (2.555%)** per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. At the end of each month, accrued interest shall be added to and made part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 7 of this Note.

### (B) Place
Payment shall be made at: **One Reverse Mortgage, LLC, 9920 Pacific Heights Blvd, Ste 350 San Diego, CA 92121** or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

### (D) Forfeiture by Lender
If Lender fails to make loan advances as required by the loan documents (this Note, Security Instrument and Home Equity Conversion Loan Agreement) and Lender fails to cure the default after notice from the Borrower, the Lender forfeits all principal and interest due on this Note, provided that this forfeiture does not apply if this Note is endorsed to the Secretary of Housing and Urban Development.

## 5. INTEREST RATE CHANGES

### (A) Change Date
The interest rate may change on the first day of **December, 2013**, and on [ ] that day of each succeeding year [X] the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the interbank offered rates for one month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* on the first business day of each week, which is Monday, or Tuesday if Monday is a non-publishing day. Any particular Index is valid until a New Index is published the following Monday, or Tuesday if Monday is a non-publishing day. "Current Index" means the most recent Index figure that is valid 30 days before the Change Date, rounded to three digits to the right of the decimal point. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of **TWO AND 375/1000** percentage points **(2.375%)** to the current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.





EXHIBIT

A

**(D) Limits on Interest Rate Changes**
[ ] The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

[X] The interest rate will never increase above **TWELVE AND 555/1000 percent (12.555%).**

**(E) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**
A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**(G) Effect of Changes**
The Lender shall not reduce the amount or number of advances under this Note because of an adjustment in the interest rate.

**6. BORROWER'S RIGHT TO PREPAY**
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

*First*, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

*Second*, to that portion of the principal balance representing aggregate payments for servicing fees;

*Third*, to that portion of the principal balance representing accrued interest due under the Note; and

*Fourth*, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments on an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT-IN-FULL**
**(A) Death or Sale**
Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

(i)   All Borrowers die, or

(ii)  A Borrower conveys all of his or her title to the Property and no other Borrower retains title to the Property in fee simple or on a leasehold interest as set forth in 24 CFR 206.45(a).

**(B) Other Grounds**
Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i)   All Borrowers cease occupying the Property for longer than 12 consecutive months without the prior written approval of the Lender; or

(ii)  Borrower (a) defaults on an obligation specified in the Loan documents to repair and maintain, pay taxes and assessments on, or insure, the Property; or (b) commits actual fraud in connection with the Loan; or

(iii) Borrower fails to maintain the priority of Lender's lien on the Property, after Lender gives notice to Borrower, by promptly discharging any lien that has priority over the Lender's lien within ten (10) days after the date Borrower receives the notice. Lender shall not require immediate payment in full if Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the Property; (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by Lender's lien on the Property.



q0331856212901400000000>

**(C)  Payment of Costs and Expenses**
If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D)  Trusts**
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant for purposes of this Paragraph.

**8.  WAIVERS**
Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at an different address if Borrower is given a notice of that different address.

**10.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property covered by the Security Instrument.

**11.  RELATIONSHIP TO SECOND NOTE**
**(A)  Second Note**
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B)  Relationship of Secretary Payments to this Note**
Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i)     This Note is assigned to the Secretary; or

(ii)    The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C)  Effect on Borrower**
Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, such payments shall be made under the Second Note, and Borrower shall not be required to pay any amount of principal, interest and shared appreciation, if any, owed under this Note.

**12.  SHARED APPRECIATION (If Applicable)**
If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.


_Nicholas H. Owens_____09/27/13 (Seal)
Borrower - **Nicholas H. Owens**

After recording return to:
Title Source
662 Woodward Ave
Detroit MI 48226

When Recorded Mail To:
One Reverse Mortgage, LLC
Attn: Capture
623 Woodward Avenue
Detroit, MI 48226

Prepared By:
One Reverse Mortgage, LLC
9920 Pacific Heights Blvd, Ste 350
San Diego, CA 92121

_____ Space Above This Line For Recording Data

**State of Texas**
**Parcel Number: 3490-377-001-012-00**

FHA Case Number:
  Loan Number: :
  MIN:

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### ADJUSTABLE RATE
### HOME EQUITY CONVERSION DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on **September 27, 2013** ("Date"). The trustor is **Nicholas H. Owens, an unmarried man** whose address is **1707 Spruce St, Lufkin, TX 75901** ("Borrower"). The trustee is **G. Tommy Bastian** whose address is **15000 Surveyor Blvd., Addison, TX 75001** ("Trustee"). The **beneficiary under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ('MERS').** MERS is a separate corporation that is acting solely as nominee for Lender, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **One Reverse Mortgage, LLC** which is organized and existing under the laws of **DELAWARE,** and whose address is **9920 Pacific Heights Blvd, Suite 350, San Diego, CA 92121** ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the



q03318562129023330000000m

Finale Document Services © 0329 07/07

Texas Deed of Trust HECM ADJUSTABLE RATE - MERS



EXHIBIT
B

debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **ONE HUNDRED FORTY SIX THOUSAND TWO HUNDRED FIFTY AND NO/100** (U.S. **$146,250.00**); (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **Angelina** County, Texas:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

which has the address of: **1707 Spruce St, Lufkin, TX 75901** ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2.  **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence

q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m
Finale Document Services © 0329 07/07

Texas Deed of Trust HECM ADJUSTABLE RATE - MERS

or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument, subject to any limitation imposed under applicable law, or be held in escrow to be so applied when permissible under applicable law. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's Principal Residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's Principal Residence for the term of the Security Instrument. "Principal Residence" shall have the same meaning as in the Loan Agreement.

    Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal Residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

    If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails



q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender or MERS, subject to applicable law, may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.  **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower. Any expenditures made in connection with the protection and preservation of the Property may be paid with Loan Advances and added to the outstanding balance to the extent the expenditures are for any of the following Borrower obligations: (a) taxes; (b) insurance; (c) costs of repairs or maintenance performed by a person or company that is not an employee of the lender or a person or company that directly or indirectly controls, is controlled by, or is under common control with Lender; (d) assessments levied against the Principal Residence; and (e) any lien that has, or may obtain, priority over Lender's lien as it is established in the Loan Documents, as defined in the Loan Agreement. Although Lender may take action under this Paragraph 6, Lender does not have to do so.

7.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument, subject to any limitation imposed under applicable law, or be held in escrow to be so applied when permissible under applicable law. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

    (a)  **Due and Payable.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:

         (i)   All Borrowers die; or



q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (A) title to the Property in fee simple; (B) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, (or retaining a beneficial interest in a trust with such an interest in the Property); or (C) a life estate in the Property.

**(b) Due and Payable with Secretary Approval.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) All Borrowers cease occupying the Property for 12 consecutive months without the prior written approval of the Lender ; or

(ii) Borrower: (A) defaults on an obligation specified in the Loan Documents to repair and maintain, pay taxes and assessments on, or insure, the Property; or (B) commits actual fraud in connection with the Loan; or

(iii) Borrower fails to maintain the priority of Lender's lien on the Property, after Lender gives notice to Borrower, by promptly discharging any lien that has priority or may obtain priority over the Lender's lien within ten (10) days after the date Borrower receives the notice. Lender shall not require immediate payment in full if Borrower: (A) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (B) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the Property; or (C) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by Lender's lien on the Property.

**(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 occur.

**(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9. Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed-in-lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a



q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

Finale Document Services © 0329 07/07

Texas Deed of Trust HECM ADJUSTABLE RATE - MERS

Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (a) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding; (b) reinstatement will preclude foreclosure on different grounds in the future; or (c) reinstatement will adversely affect the priority of the Security Instrument.

12. **Lien Status.**

    (a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents.

    (b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

    (c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (i) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (ii) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to



q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

prevent the enforcement of the lien or forfeiture of any part of the Property; or (iii) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one more of the actions set forth above within ten (10) days of the giving of notice.

13. **Relationship to Second Security Instrument.**

    **(a)**     **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

    **(b)**     **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

        (i)     This Security Instrument is assigned to the Secretary; or

        (ii)     The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

    If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

    **(c)**     **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not be required to pay any amounts of principal, interest, and shared appreciation, if any, owed under the Note.

    **(d)**     **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forfeiture by Lender.** If Lender fails to make loan advances as required by the Loan Documents and Lender fails to cure the default after notice from the Borrower, Lender forfeits all principal and interest due on this Security Instrument, provided that this forfeiture does not apply if this Security Instrument is assigned to the Secretary of Housing and Urban Development.

15. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

16. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a



q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

17. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 17.

18. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

19. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

20. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 20.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

21. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale. Except as otherwise provided herein, Borrower hereby**



q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

Finale Document Services © 0329 07/07

Texas Deed of Trust HECM ADJUSTABLE RATE - MERS

waives any notice, demand, presentment, notice of non-payment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration, or any other notice or any other action. The failure to exercise any remedy available to Lender shall not be deemed to be a waiver of any rights or remedies of Lender under the Note, this Security Instrument or the Loan Agreement. As permitted by applicable law, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 21, including, but not limited to, reasonable attorneys' fees.

22. **Foreclosure; Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by applicable law, including, without limitation, foreclosure under a power of sale. The lien evidenced by this Security Instrument may be foreclosed only by court order, if the foreclosure is for a ground other than those described in Paragraph 9(a). Lender shall follow any rules of civil procedure promulgated by the Texas Supreme Court related to the foreclosure of liens under Section 50(a)(7), Article XVI of the Texas Constitution, if applicable. Lender shall be entitled to collect all expenses incurred in pursuing all the remedies provided in this Paragraph 22, including but not limited to, reasonable attorneys' fees and costs of title evidence.

Lender may request Trustee to proceed with foreclosure under the power of sale. Any such request shall comply with such rules of civil procedure if they apply. Trustee is hereby authorized and empowered, and it shall be Trustee's special duty, upon such request of Lender, to sell the Property, or any part thereof, at public auction to the highest bidder for cash, in one or more parcels and in any order Trustee determines, with or without having taken possession of same. Any such sale (including notice thereof) shall comply with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust. If there is no statute in force at the time of the sale governing sales of Texas real property under powers of sale conferred by deeds of trust, such sale shall comply with applicable law, at the time of the sale, governing sales of Texas real property under powers of sale conferred by deeds of trust.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying the Property with general warranty of title by Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the

Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be tenants at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 22 or applicable law.

23. **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

24. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

25. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by applicable law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

26. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

27. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security



q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

Texas Deed of Trust HECM ADJUSTABLE RATE - MERS

Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

28. **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **2.555%** which accrues on the principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the interbank offered rates for one month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published on the first business day of each week in the "Money Rates" section of *The Wall Street Journal*("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any Index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **December, 2013**, and on [ ] that day of each succeeding year [X] the first day of each succeeding month ("Change Date") until the loan is paid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the ("Calculated Interest Rate") for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date ("the Existing Interest Rate").

[ ] **Annually Adjusting Variable Rate Feature** The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

[X] **Monthly Adjusting Variable Rate Feature** The Calculated Interest Rate will never increase above **TWELVE AND 555/1000 Percent (12.555 %)**

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

29. **Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

30. **Compliance with Section 50(v), Article XVI of the Texas Constitution.** Lender and Borrower agree that (a) the Borrower cannot use a credit card, debit card, preprinted solicitation check, or similar device to obtain an advance; (b) after the time the extension of credit is established, no transaction fee will be charged or collected solely in connection with any debit or advance; and (c) the Lender or holder may not unilaterally amend the extension of credit.



q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

31. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider            [ ] Planned Unit Development Rider

[ ] Shared Appreciation Rider       [x] Other [Specify]:
                                                   **Legal Description**

32. **Nominee Capacity of MERS.** MERS serves as beneficiary of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Mortgagee herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Mortgage. Subject to the foregoing, all references herein to "Beneficiary" shall include Lender and its successors and assigns.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____       _____

Witness                 Date      Witness                    Date

 09/27/13 (Seal)

Borrower - **Nicholas H. Owens**

q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

Finale Document Services © 0329 07/07                         Texas Deed of Trust HECM ADJUSTABLE RATE - MERS

Space Below This Line For Acknowledgment

The State of Texas

County of _Angelina_

Before me _Gloria Toran / notary_ (name/title of officer) on this day personally appeared **Nicholas H. Owens**, known to me (or proved to me on the oath of _him_ or through _DL_ (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this **27th** day of **September, A.D., 2013**.



Signature of Officer

_Notary_

Title of Officer

My Commission expires : _August 1, 2017_

GLORIA D TORAN
My Commission Expires
August 1, 2017



q 0 3 3 1 8 5 6 2 1 2 9 0 2 3 3 0 0 0 0 0 0 0 m

Finale Document Services © 0329 07/07

Texas Deed of Trust HECM ADJUSTABLE RATE - MERS



GLORIA D TORAN
My Commission Expires
August 1, 2017

# EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 3490-377-001-012-00

Land Situated in the City of Lufkin in the County of Angelina in the State of TX

All those certain lots, tracts or parcels of land lying and situated in Angelina County, Texas, described as follows:

Tract No. One:

All that certain lot, tract or parcel of land lying and situated in Angelina County, Texas, and being Lot No. Twelve (12) of the Castlewood Subdivision to the City of Lufkin, Angelina County, Texas, as the same appears upon the official map or plat of said Subdivision, which is of record in Cabinet A, Slide 163-A, of the Map and Plat Records of Angelina County, Texas, to which reference is hereby made for any and all purposes.

Tract No. Two;

All that certain tract or parcel of land lying and situated in Angelina County, Texas, out of the Mckinney & Williams Survey, Abstract No. 46, and being a part or portion of Lot No. Eleven (11) of the Castlewood Subdivision, a subdivision of 7.758 acres of land, recorded in Cabinet A, Slide 163-A, of the Map and Plat Records of Angelina County, Texas, to which reference is hereby made for any and all purposes, and the said part or portion being described by metes and bounds as follows, to-wit:

Beginning at the Southeast corner of the aforesaid referred to Lot No. 11, also being the Northeast corner of Lot 12 of the aforesaid referred to Castlewood Subdivision, an iron pin for corner in the East boundary Line of the said Castlewood Subdivision;

Thence N 70 deg. 00 min. 00 sec. W with the South Boundary Line of the aforesaid Lot 11 and the North Boundary Line of the aforesaid Lot 12, at 111.26 feet a point for corner;

Thence N 32 deg. 19 min. 30 sec. W with the Southwest Boundary Line of the aforesaid Lot 12, at 29.98 feet intersect the East Right-of-Way line of Spruce Street, an iron pin for corner;

Thence S 62 deg. 16 min. 12 sec. E, at 136.23 feet the point and place of beginning, and containing 0.023 acres of land, more or less.

Being all that certain tract or parcel of land lying and situated in Angelina County, Texas out of the McKinney and Williams Survey, Abstract No. 469 and being all of Lot 12 and a part of Lot 11 of the

Castlewood Subdivision, a subdivision of 7.758 acres of land recorded in cabinet A, Slide 163-A of the Plat Records of Angelina County, Texas, to which reference is hereby made for any and all purposes. Said tract being described by metes and bounds as follows, to wit:

Beginning at the southeast corner of the said Castlewood Subdivision. Same being the southeast corner of the referred to Lot 12, a l/2-inch iron rod found for corner;

Thence N78°13'06"W 176.53 feet (record - 176.37 feet), with the south boundary line of said Castlewood Subdivision to a 5/8-inch iron rod found for corner (this line was used as the basis of bearings)

Thence N20°18'47"E 110.98 feet (record - N20°00'OO"E 110.00 feet) to a 1/2-inch iron rod found in the curving right-of-way of Spruce Street;

Thence following a curve to the left (Central Angle = 52° 19' 40" R= 50.00 feet LC; N84°21' 58" E, 44.09 feet) at 45.66 feet, a l/2-inch iron rod found for corner in an existing water meter. Same being the common corner of the aforementioned Lot 11 and Lot 12;

Thence S61°36'21"E 135.93 feet to a 1/2-inch iron rod found for corner;

Thence S20°04'53"W 81.97 feet (record=S20°00'00"W 85.91 feet), the Point and Place of Beginning and containing 0.427 acres of land, more or less.

NOTE: The Company is prohibited from insuring the area or quantity of the land. The Company does not represent that any acreage or footage calculations are correct. References to quantity are for identification purposes only.

Commonly known as:   1707 Spruce Street, Lufkin, TX 75901-6445

# **** Electronically Filed Document ****

## Angelina County Texas
## Amy Fincher
## County Clerk

---

Document Number:  2022-428870

Recorded As        :  EREC-RECORDINGS

Recorded On:            November 23, 2022

Recorded At:            10:27:15 am

Number of Pages:        3

Recording Fee:          $30.00

Parties:

Direct- MORTGAGE ELECTRONIC REGISTRATION SYSTEMS

Indirect- MORTGAGE ASSETS MANAGEMENT LLC

Receipt Number:         393579

Processed By:           Maria Solis

---

************ THIS PAGE IS PART OF THE INSTRUMENT ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---

I hereby certify that this instrument was FILED on the date and
at the time stamped hereon by me and was duly RECORDED in
the Official Public Records of Angelina County, Texas.

*Amy Fincher*

**Amy Fincher, County Clerk, Angelina County Texas**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS; YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.**

# ASSIGNMENT OF DEED OF TRUST

Prepared By And
After Recording Return To:

 **DocSolutionUSA**

DocSolutionUSA, LLC, dba DocSolution, Inc.
Warren E. Johnsey, Attorney at Law
2316 Southmore
Pasadena, TX 77502
713-941-4928
**DocSolutionUSA, LLC, d/b/a DocSolution, Inc. did not prepare a title search of the Property described in the document below. The Preparer of this document makes no representation as to the status and validity of, including, but not limited to, the title, loan history, boundary survey, property use, or zoning regulations of the Property assigned, transferred, conveyed, released, or any other disposition of the Property. Information herein was provided to preparer by Grantor/Grantee and/or their Agent.**

Client Id: RMS/FCAOL
Loan #: 109762-ER

*1 1 9 2 1 0 1*

Min:                                    MERS Phone: 1-888-679-6377

FHA Case Number:

*FOR VALUE RECEIVED*, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY** , whose address is P.O. Box 2026, Flint, MI 48501-2026, **AS NOMINEE FOR ONE REVERSE MORTGAGE, LLC**
, ITS SUCCESSORS AND ASSIGNS, does hereby assign and transfer to **MORTGAGE ASSETS MANAGEMENT, LLC,** forever and without recourse, whose address is 14405 Walters Road, Suite 200, Houston, TX 77014, all its right, title and interest in and to a certain deed of trust from **NICHOLAS H. OWENS, AN UNMARRIED MAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY AS NOMINEE FOR ONE REVERSE MORTGAGE, LLC**
, ITS SUCCESSORS AND ASSIGNS for **$146,250.00,** dated 9/27/2013 of record on 10/8/2013 as Document 2013-00310414, in the ANGELINA County Clerk's Office, State of TEXAS.

Property Address: 1707 SPRUCE ST, LUFKIN, TEXAS 75901

Executed this 11-16-2022

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY AS NOMINEE FOR ONE REVERSE MORTGAGE, LLC , ITS SUCCESSORS AND ASSIGNS**

By:  LISA MARIE KING
Title:  ASSISTANT SECRETARY

**STATE OF TEXAS**

**COUNTY OF HARRIS**

Before me, the undersigned, a Notary Public on this day personally appeared LISA MARIE KING, ASSISTANT SECRETARY known to me (or proved to me on the oath of _____), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, A DELAWARE CORPORATION, AS NOMINEE FOR ONE REVERSE MORTGAGE, LLC , ITS SUCCESSORS AND ASSIGNS a corporation, and that he/she had executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office this 14 day of November, A.D. 2022

Notary Public in and for the State of Texas
Notary's Printed Name: _____
My Commission Expires: _____



DOT for $146,250.00 dated 9/27/2013



Tegan Erwin
My Commission Expires
7/6/2026
Notary ID133845598

# **** Electronically Filed Document ****

## Angelina County Texas
## Amy Fincher
## County Clerk

---

Document Number: 2022-428870

Recorded As      : EREC-RECORDINGS

Recorded On:          November 23, 2022

Recorded At:          10:27:15 am

Number of Pages:      3

Recording Fee:        $30.00

Parties:

    Direct- MORTGAGE ELECTRONIC REGISTRATION SYSTEMS

    Indirect- MORTGAGE ASSETS MANAGEMENT LLC

Receipt Number:       393579

Processed By:         Maria Solis

---

### *********** THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---

I hereby certify that this instrument was FILED on the date and
at the time stamped hereon by me and was duly RECORDED in
the Official Public Records of Angelina County, Texas.

*Amy Fincher*

**Amy Fincher, County Clerk, Angelina County Texas**



EXHIBIT
C

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON,
YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING
INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN
REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS;
YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.**

# ASSIGNMENT OF DEED OF TRUST

**Prepared By And
After Recording Return To:**

**DS DocSolutionUSA**

DocSolutionUSA, LLC, dba DocSolution, Inc.
Warren E. Johnsey, Attorney at Law
2316 Southmore
Pasadena, TX 77502
713-941-4928
**DocSolutionUSA, LLC, d/b/a DocSolution, Inc. did not prepare a title search of the Property described in the
document below. The Preparer of this document makes no representation as to the status and validity of,
including, but not limited to, the title, loan history, boundary survey, property use, or zoning regulations of
the Property assigned, transferred, conveyed, released, or any other disposition of the Property. Information
herein was provided to preparer by Grantor/Grantee and/or their Agent.**

Client Id: RMS/FCAOL
Loan #: 109762-ER



\* 1 1 9 2 1 0 1 \*

Min:                                    MERS Phone: 1-888-679-6377

FHA Case Number:

*FOR VALUE RECEIVED*, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
BENEFICIARY** , whose address is P.O. Box 2026, Flint, MI 48501-2026, **AS NOMINEE FOR ONE REVERSE
MORTGAGE, LLC**
, ITS SUCCESSORS AND ASSIGNS, does hereby assign and transfer to **MORTGAGE ASSETS
MANAGEMENT, LLC**, forever and without recourse, whose address is 14405 Walters Road, Suite 200, Houston,
TX 77014, all its right, title and interest in and to a certain deed of trust from **NICHOLAS H. OWENS, AN
UNMARRIED MAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
BENEFICIARY AS NOMINEE FOR ONE REVERSE MORTGAGE, LLC**
, ITS SUCCESSORS AND ASSIGNS for $146,250.00, dated 9/27/2013 of record on 10/8/2013 as Document
2013-00310414, in the ANGELINA County Clerk's Office, State of TEXAS.

Property Address: 1707 SPRUCE ST, LUFKIN, TEXAS 75901

Doc-428870

Executed this _11-16-2022_

**MORGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY AS NOMINEE FOR ONE REVERSE MORTGAGE, LLC**
**, ITS SUCCESSORS AND ASSIGNS**



By:     LISA MARIE KING
Title:    ASSISTANT SECRETARY

**STATE OF TEXAS**

**COUNTY OF HARRIS**

Before me, the undersigned, a Notary Public on this day personally appeared LISA MARIE KING, ASSISTANT SECRETARY known to me (or proved to me on the oath of _____ ), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, A DELAWARE CORPORATION, AS NOMINEE FOR ONE REVERSE MORTGAGE, LLC
, ITS SUCCESSORS AND ASSIGNS a corporation, and that he/she had executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office this _14_ day of _November_, A.D. _2022_



Notary Public in and for the State of Texas
Notary's Printed Name: _____
My Commission Expires: _____

DOT for $146,250.00 dated 9/27/2013

Tegan Erwin
My Commission Expires
7/6/2026
Notary ID 133845598